UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG W. PADLO,

    Plaintiff,                      Civil Action No. 15-11130
                                       Honorable Arthur J. Tarnow
    v.                            Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 14, 17]**

Plaintiff Craig W. Padlo appeals a final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the administrative law judge's ("ALJ") decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [R. 17] be **GRANTED**;
- Padlo's motion [R. 14] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  BACKGROUND

### A.  Padlo's Background and Disability Application

Padlo was 54 years old when he submitted his application for disability benefits in July 2012, alleging a disability onset date of December 1, 2000.  [R. 11-2, Tr. 12]. He later amended is alleged onset date to July 20, 2004. [*Id.*; R. 11-5, Tr. 121]. His date last insured is December 31, 2005. [R. 11-2, Tr. 12; R. 11-6, Tr. 122]. Padlo had previously worked as an automotive machinist and a shop supervisor.  [R. 11-2, Tr. 20].  He claims to be disabled due to degenerative disc disease, a herniated disc, and depression. [R. 11-2, Tr. 14; 11-6, Tr. 126]. After a hearing, the ALJ determined that Padlo was not disabled. [R. 11-2, Tr. 12]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.,* Tr. 1-3]. Padlo timely filed for judicial review. [R. 1].

### B.  The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

2

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Padlo was not disabled. At the first step, he found that Padlo had not engaged in substantial gainful activity from his alleged onset date to his date last insured. [R. 11-2, Tr. 14]. At the second step, he found that Padlo had the severe impairments of "degenerative disc disease of the cervical spine" and "depression." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 14-15]. In making this determination, the ALJ found that Padlo had a mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence and pace. [*Id.*, Tr. 15].

After the third step, the ALJ found that Padlo had the RFC to perform "sedentary work"[2] with the following additional limitations:

> [Only] simple repetitive work instructions, no overhead reach or

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." § 404.1567(b).

4

> lift with either hand, occasional bend, twist turn, climb, crawl, sit, squat, kneel, crouch or stoop; no working at heights or around moving machinery; and a sit/stand option at will that would allow him to remain on task 90% of the time.

[R. 11-2, Tr. 15-16]. At step four, the ALJ found that Padlo could not perform past relevant work. [*Id.*, Tr. 20]. With the assistance of vocational expert ("VE") testimony [*see id.*, Tr. 45-49], the ALJ determined at step five that based on Padlo's age, education, work experience and RFC, he could perform the positions of office clerk, surveillance systems monitor, and information clerk, of which significant jobs existed in the economy. [*Id.*, Tr. 21].

## II. ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

5

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741

F.3d at 729.

Padlo argues that the ALJ failed to incorporate his moderate limitations in maintaining concentration, persistence, or pace into the RFC; that the treating physician rule was violated; and that the RFC was not based on a medical opinion, contrary to law. The Commissioner argues that substantial evidence in the medical record supports the ALJ's decision, and that the ALJ properly adhered to all relevant procedures. The Court agrees with the Commissioner that the ALJ's decision should be upheld.

### A. The RFC Accurately Reflected Padlo's Moderate Deficiencies of Concentration, Persistence, or Pace

The ALJ found that Padlo had "'moderate' deficiencies of concentration, persistence or pace in completing tasks in a timely manner." [R. 11-2, Tr. 15]. With this in mind, the ALJ limited Padlo to jobs with "simple repetitive work instructions," in the RFC, [*id.*], and posed a hypothetical to the VE limited to "unskilled jobs."[3] [R. 11-2, Tr. 47]. Padlo argues that neither the RFC nor the hypothetical adequately reflect his assessed limitations on concentration, persistence, or pace ("CPP"), citing

---

[3] "Unskilled work" reflects the RFC's restriction of only "simple repetitive work instructions." [R. 11-2, Tr. 15]. *See* 20 C.F.R. § 404.1568(a).

7

*Edwards v. Barnhart*, 383 F.Supp.2d 920 (E.D. Mich. 2005) and *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516. In *Edwards*, the plaintiff was assessed with a moderate limitation in CPP, and the ALJ's question to the VE limited the hypothetical claimant to "jobs entailing no more than simple, routine, unskilled work." 383 F. Supp. 2d at 930. The court found that "[w]hile close, these [hypothetical limitations] are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE." *Id*. "Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id*.

The Sixth Circuit cited *Edwards* approvingly in *Ealy*, where the hypothetical posed to the VE was also found to not fully convey the plaintiff's limitations. 594 F.3d at 516-17. There, the ALJ gave the most weight to a medical opinion stating that the plaintiff was limited in "sustain[ing] attention to complete simple repetitive tasks to '[two-hour]

8

segments over an eight-hour day where speed was not critical.'" *Id.* at 516. Because the hypothetical omitted these speed- and pace-based restrictions, it was found to be inadequate. *Id.* at 517.

Though the *Edwards* and *Ealy* courts found that moderate CPP restrictions must be reflected in the RFC, "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC." *Schalk v. Comm'r of Soc. Sec.*, No. 10-CV-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011).

In *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 436-37 (6th Cir. 2014), the ALJ also found moderate difficulties in CPP, but the court distinguished *Ealy* because the ALJ did not rely on a medical opinion limiting the plaintiff's ability to "maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." The ALJ had explicitly given no weight to a medical statement that the plaintiff's attention, concentration, and memory were weak, and did not adopt that doctor's

9

opinion that a "very low stress environment" was needed, although the RFC did reflect some of these concerns. *Id.* at 437-38.

*Ealy* is similarly distinguishable here, where there is no medical opinion in the record supporting additional restrictions based on his CPP. The only medical opinion on Padlo's mental limitations is from state agency physician Thomas T. L. Tsai, M.D., who determined that Padlo had "mild" difficulties in CPP in October 2012. [R. 11-3, Tr. 54]. The ALJ gave Dr. Tsai's opinion only partial weight, [R. 11-2, Tr. 20], opining that Padlo's "pain medication could be expected to reduce concentration" and thus finding him to have moderate deficiencies of CPP. [*Id.*, Tr. 15]. It is Padlo's burden to prove that he requires a more restrictive mental RFC, *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008), and his medical records do not substantiate that he lacks the capacity for simple, routine and repetitive tasks.

For these reasons, Padlo's complaint that the RFC did not account for his moderate CPP is without merit.

**B. The ALJ Did Not Violate the "Treating Physician Rule" or Craft an RFC Unsupported by Medical Opinion**

The ALJ gave "little weight" to a September 2013 opinion of Padlo's treating physician, Mark Ealovega, M.D., and greater weight to Dr. Ealovega's July 2004 opinion. [R. 11-2, Tr. 20]. Padlo argues that the ALJ erred by not giving Dr. Ealovega's 2013 opinion sufficient weight.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. If an ALJ gives less than controlling weight to a treating source's opinion, she must provide "good reasons" for doing so that are "supported by the evidence in the case record, and … sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully

crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

In this case, the ALJ gave good reasons for not fully crediting Dr. Ealovega's 2013 opinion. In that opinion, Dr. Ealovega stated that Padlo could only work for four hours per day, as he was limited by chronic neck pain and fatigue caused by pain medications; that he was incapable of performing a "sedentary low stress job" full time; and that he was initially disabled on July 20, 2004, and had been continuously disabled since that date. [R. 11-7, Tr. 232-33]. The ALJ found this opinion to be inconsistent with Dr. Ealovega's treatment records and medical opinion from the relevant time period, reasoning that "[Dr. Ealovega's] actual office notes for the period under consideration notes [*sic*] the claimant had no side effects from medications." [R. 11-2, Tr. 20]. This observation was accurate. The medical record reflects no mention of significant side effects from medications during the relevant time period. [R. 11-7, Tr. 203-05, 223]. After his date of last insured, Padlo denied having side effects from his medication in 2007 and 2009, and only mentioned that hydrocodone caused constipation and stress in 2012. [*Id.*, Tr. 139, 217, 221-22]. Despite the sparsity of evidence demonstrating medication effects, the ALJ did take

possible side effects into account when crafting the RFC by limiting Padlo to jobs with "simple repetitive work instructions" due to the possibility that his concentration would be limited by the medication. [R. 11-2, Tr. 15]. But the evidence in the record generally conflicts with Dr. Ealovega's insistence that Padlo would be substantially limited due to the fatigue caused by his medications.

The ALJ also noted that Dr. Ealovega's 2013 opinion conflicts with his earlier opinion from July 20, 2004, the alleged onset date of Padlo's disability. [R. 11-2, Tr. 20]. In that opinion, Dr. Ealovega stated that Padlo was "improving" since February 2004 "with conservative measures." [R. 11-7, Tr. 223]. He found that "work restrictions of light-duty work only including no extensive hammering or lifting greater than 10 pounds are appropriate." [*Id.*]. This conflicts with the later opinion that Padlo could only lift 5 pounds and was incapable of even sedentary work. [*Id.*, Tr. 233].

Finally, the ALJ found that "[t]here is very little evidence addressing the claimant's allegedly debilitating health concerns prior to the claimant's date last insured," that he "continued to work for significant periods after

13

2004 doing fairly heavy work,"[4] and that the record reflects "significant treatment gaps in a history of entirely routine and conservative care." [R. 11-2, Tr. 19].

The ALJ gave ample reasons for determining that Dr. Ealovega's 2013 opinion was not well-supported by the record, and was inconsistent with other evidence, including his own earlier opinion; he did not err in affording the 2013 opinion little weight.

Padlo also argues that the RFC is unsupported by any medical opinion, citing *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074, at *16 (E.D. Mich. Aug.19, 2007). That is not true; the ALJ gave partial weight to the opinions of Dr. Tsai and B.D. Choi, M.D., and some weight to Dr. Ealovega's opinion from 2004. [R. 11-2, Tr. 20]. "The ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013). Requiring the ALJ to strictly base his RFC on a medical opinion would be an abdication of this responsibility. *Id.*

---

[4] The records describe Padlo as having had to do "more and more physical labor" in December 2007, and being "in the process of rehabilitating an old building and [ ] doing a lot of manual labor on his own including using tools a lot," in October 2011. [R. 11-7, Tr. 213, 221].

(citing SSR 96–5p, 1996 WL 374183 (July 2, 1996)). This argument lacks merit.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [R. 17] be **GRANTED**; that Padlo's motion [R. 14] be **DENIED**; and that the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: July 15, 2016

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party

15

might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 15, 2016.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager